Good morning, Your Honors. Good morning. I'm Michael O'Connor for the appellate Archer Western Construction. In this case, Your Honor, there were factual questions before the district court that should have precluded such a check. And first and foremost among those is whether there was damage to the work or property of others than Archer. And in this case, we submit that the turbine and the electrical equipment, which was manufactured by GE and supplied to Archer by the owner and as to which the owner maintained was its property, was property that was damaged that was not Archer's. Now, the contract with GE to supply the turbines is a separate contract. It's in the record at page 166. And that's a contract which required GE not only to manufacture and deliver this turbine, this engine, but also to be on site with a supervisor to direct the contractor, Archer, exactly how to install that turbine. And that second part is very important because the work was not simply delivering the equipment. The work also was telling Archer exactly how to install it because GE is the expert. Archer's a contractor. They build structures. They don't install turbines. It seems like we're here and the main focus is how to construe the phrase, that particular part. And even if you would like for us to construe that, or if we do construe it as narrowly as you would like for us to, can you, I guess, explain your position as to why the damages to the turbines wouldn't be excluded from coverage? Well, because the cases like the Clarendon case that the insurance company relies on here all state the proposition, which is not disputed, that if there's damage to the work or property of others than the contractor, it's covered. If the contractor comes into a house, knocks over the vase while he's going to repair the porch, the damage to the vase is obviously the owner's property, which is damaged in the course of not doing his work, but doing, you know, being, and I think there's no dispute, and certainly the respondents can see the damage to the property of others is covered. I know, but if it was Archer's faulty work that, on the turbines, that led to damage to the turbines, I don't understand your argument as to why this would not be that particular part of the property that Archer performed work on. It was our position below that it wasn't our fault, that it was GE's fault, and we submitted evidence that GE had supplied faulty parts in the turbine. But did you work on the turbine? We supplied the work pursuant to their instructions. Now, keep in mind, we have, you know, GE telling us exactly what to do. We supplied the work to put the embeds into the concrete that we built, and then to put the turbine into the couplings that we had constructed. There was damage to the turbine. So it would be GE's responsibility, in your view? Yes. Even though they didn't do the actual work, they just supplied the parts. GE's responsibility was to supply non-defective parts. The owner, under his contract with us, said that we would get non-defective parts. Did GE settle out? GE settled out, yes. And they paid a significant sum. And they were sued by the owner for supplying defective parts, which is the claim we made. But in this case, if you look at our contract, and I think this is really important, our contract has a section that says work by others. And it says you, the contractor, have an obligation to follow the instructions and to cooperate with the work of others on this project. The work of others on the project is specifically then identified as GE and the GE contract. But I'm looking at how you're interpreting this so narrowly. It's just odd to me because you don't have responsibility because GE provided the parts, even though you worked on that particular part. I know that's not your view, but it seems like it might be a reasonable interpretation. Let me just ask this question then, and then you can drill down. But it seems like it would lead to kind of odd results in certain cases and be difficult for courts to apply because we would then be determining what is the smallest possible unit of division available to the work at issue. I mean, if we did that as you propose, I mean, it seems like it would be very challenging in certain cases, such as the one maybe we're talking about involving the manufacturer assembly of machines with many interacting parts. Well, that's exactly what the Eichler and the Blackfield case say the court should do. I mean, it is a question that depends on the circumstances of the case. In this particular case, we did not have control over the entire job site. We were there to build the project, and then as it came to the turbine, the responsibility for the turbine was all on GE. You also didn't draft the policy language. We didn't draft the policy language, and the court in SWICO in the northern district just a few years ago applying Eichler and Blackfield says, listen, it's ambiguous in this context as to whether a particular part means the whole project for you, the contractor, or only the particular part that you're working on. And because it's ambiguous, because the insurance company drafted that language, it's construed against them. So in this case, what makes this case specific is that we did not control the whole project. It's not like the Arroyo case, and I know the Arroyo case was recently cited and was submitted. That's an entirely different case. That's a case where you have a vineyard. There's no discrete components to it. The work of weeding and watering and all the other activities are conducted over the entire vineyard at the same time. In this case, we had a separate contractor, GE, that had a separate contract to supervise the work of the installation and to tell us what to do. There's evidence in the record that our engineer objected to the specific thing that caused the turbine to damage, and that was a pre-rotational check while the engine coupling was in together. So in other words, this turbine, very heavy, expensive piece of equipment, was supposed to be tested in an uncoupled state before it was connected and then turned. We objected to doing the installation without having that pre-check. GE specifically instructed our project engineer, and his deposition testimony is in the record, to do that, and that's what caused the turbine. Is GE not here because you settled out with GE? GE was sued by a water company. Yeah, but I'm asking about Archer. Archer settled out with GE? Archer settled out with everyone and paid some money, including $2 million of the Liberty Mutual money, which was the policy underlying. I'm just wondering why GE isn't here, or GE's insurer isn't here, because, I mean, a large part of your argument is we didn't do it. Some other dude did it. They paid a lot of money, as we paid a lot of money, to settle out our claims, because I pointed out there's an indemnity provision in our contract, which is not the same indemnity as the GE contract, which says you're liable for anything, including the Southern California Water Authority's own negligence. So with that broad indemnity and with the allegations that were made of the case, yes, we settled. What do you say about the arising out of? The arising out of, there's a factual question. Did it arise out of our work, or did it arise out of GE's work? Well, no, if you had hands on the turbine, even under the direction of GE, I think most people would agree that that arose out of your work. And, again, that brings me back to why isn't GE here? Okay. GE was not here because they settled. But as to your specific question, if it was GE's defective parts, in other words, if defective parts of the turbine that we had nothing to do with jammed and caused this turbine to damage, that's GE's problem. We didn't touch those parts of the turbine. That was GE's faulty work. But you did the rotation. Did the rotation at their instruction, which under our contract we had to do. Which is your work. Well, it's their direction to do that. We are the hands that are implementing the directives of GE. Looking for GE. I'm just saying that there is a factual question, at least as to whether or not it was our work, because the responsibility under the GE contract makes the installation and the parts and the construction of that turbine their responsibility, and says that it's the owner's work. So as to the issue of particular part, the construction we would argue that the district court placed on this policy makes this exclusion a nullity. I mean, the exclusion has limitations in it. You know, a particular part of real property on which you are working. But it seems like the district court was following the more recent cases in the California courts, and which interpret it broadly. I know you point to Eichler and to Blackfield. I mean, I think those were duty-to-defend cases. I think those might be distinguishable. So do you think we need to certify or ask the California court to look at this? I mean, even though Blackfield was decided 50 years ago, and no other court has cited it, from what I can tell. So Eichler followed it and explained exactly why it applies in the 2011 case that was just decided in the northern district. Let me tell you the three cases the district court cited. Toll Brothers, which is an unsighted California court of appeal decision, unpublished, which cites Hillenbrand, and I'll get to Hillenbrand in a minute. It cites a Washington case, which has nothing to do with California laws because it's a different law. And it cites an Oregon case, which actually holds for us and says, listen, if there's a particular part, it's ambiguous. But it does seem like there are other California cases that have taken a more broad interpretation of this. And so I'm just trying to figure out. We're trying to figure out what the California Supreme Court would do. That's our job. And we have all these recent cases, and the California Supreme Court hasn't ever disagreed with them. The cases that have been cited, like the Clarendon case and the Barco case, which are cited by the respondents, are cases where the issue doesn't really be addressed. It's not an issue where there is damage to non-defective work. All of the work is defective. That's the claim. It's the contractor's defective work. And we don't dispute that a contractor's own defective work is not covered. There's also some cases that cite Hillenbrand. And Hillenbrand, we try to argue this point. And I know it's very detailed, but it's important. Hillenbrand is a case which is cited for the proposition that there's a different rule for general contractors than everybody else. It's wrong, and it's dicta. The Hillenbrand case was a case for malicious prosecution where the insurance company tried to argue, listen, there's these two cases, Arciero and Imperial. Those cases say general contractor is not covered. It's a different rule. Those cases don't say that. Those cases were dealing with a different exclusion. Instead of a particular part, those cases were dealing with any part, a broad exclusion, not a narrow exclusion. They also had a larger, a broader temporal element, at least one of those cases. That says any work that you do on the property, which is not our exclusion. I mean, you can't have this exclusion and give effect to its language and rule the way the district court did. The district court takes a particular part and basically means any part. It says, you know, where you're performing operations, where you were contracted to perform operations, whether you were actually doing them at the time or not. But it seems like she's focused on the project that you were given. I mean, that particular part, it seemed to be interpreted as the project that you were supposed to work on. So, I mean, maybe, you know, I'm sure you disagree with that. It seems like that's not as, you know, out there as you make it out to be. I think it depends on the facts of the case. In the Arroyo case, for example, a much different case. The court there in Arroyo writes a Hillenbrand, which I think is wrong, but it's a different case because in that case, you're dealing with one single undivided piece of work that the general contractor has complete control over. In this case, we don't have complete control over the entire project. The turbine is not our work. The installation of the turbine was not something that we had authority or discretion as to how to do. So for those reasons, we are essentially saying that this case is different because it deals with components. It deals with parts that are damaged so that there is damage to other work. There's at least a factual question. All right. Do you want to reserve the rest of your time? Yeah, I'd like to reserve my last two and a half minutes. Thank you. Good morning, Your Honor. Andrew Herold for National Union Fire Insurance Company of Pittsburgh, PA. Thank you to the panel for hearing us today. I'd like to just start with a quick response to the arguments that we just heard, which to my ear sounded like liability defenses being asserted by a general contractor claiming that other folks were responsible for the defects and damages that occurred to their work. That's not the issue before the court. What we're dealing with today in a settlement is the liability of Archer based on the allegations against Archer. I would specifically direct the court to page 9 of the Archer-Western brief and page 10 of the National Union brief, which are filled with the allegations of the defective work purportedly performed by Archer on the turbine units themselves, including the alleged warping or defamation of the turbine parts prior to assembly during the process of welding the turbine, Archer's nonconforming concrete pours that cause distortion of certain components, Archer's improper storage, handling and cleaning of parts, allowing contamination of those parts during storing and or installation. Mr. Herold, did Archer assert a claim over against GE? I do not know whether they cross-complained against GE. Would that be relevant? I don't think so. I mean, if we're going to look at the complaints filed in the underlying action, why shouldn't we look at all of the complaints or many of the complaints? I mean, if you've got a public utility suing three entities in the alternative, I mean, San Diego doesn't care who pays. They're going to make every allegation they can against every potential defendant. So I'm not sure how much weight one should place on the other. I understand your point, but people allege all kinds of things against each other in a multi-party claim. In relevant part, directly relevant to this suit, the allegations against Archer form the basis for the settlement, and that's what we evaluate to determine whether or not there's coverage under the policy. I brought this to your attention to say the allegations were much more than they just conducted a rotational check of somebody else's equipment. But you don't dispute that the turbine, the generator, that wasn't Archer's work? No, I would say it was. I mean, they didn't build it. They didn't design it. I would say the turbine is no different than most other construction project component parts when you stand back and look at the fact that it's purchased by an owner or a subcontractor. It has been worked with. So you would go so far as to say if GE designed and built a defective turbine, Archer stuck with the damage that is occasioned by that defect? When Archer's work included the assembly, installation, welding, and testing of that turbine, yes. I would say it becomes part of that work. So essentially you agree with me that GE should be here? No, I don't think we need GE because we did not insure them. No, you don't need GE, but Archer needs GE here for this case to be adequately adjudicated. I would say that they don't. I would say the issue before the court is whether a liability insurer for a general contractor has to provide coverage for property damage that occurs to the general contractor's project while the project is ongoing. That's the issue before the court. The trial court determined Archer was a general contractor. None of this is disputed. The damage was at least within the scope of the work they were performing on the project. The damage occurred while the operations were ongoing. So end of analysis as far as you're concerned? Yes. And what do you say about the possibility of a certification to the Supreme Court of California? I would say the Supreme Court has already said that they didn't need to rehear at least one or two of these cases when the parties at issue attempted to bring them up. The California courts have answered this question three times now. Denials of cert? We should act on the basis of a denial of cert? Well, I would say the court didn't think it was necessary to hear it. Barocco, West, Clarendon, Toll Brothers, three cases in the last 15 years by the California courts of appeal holding exactly as this court just did in Arroyo. In each one of those cases, it was the general contractor for the project, the damage was to the project, the damage was while the work was ongoing and had nearly identical policy language. Mr. O'Connor says Arroyo is distinguishable. What's your counter to that? I don't think it is. I think this entire discussion of slicing and dicing a general contractor's work into little discrete parts has been rejected by the courts and suffers from a logical fallacy. I will say, let's start with it usually takes two different forms. There's a temporal form and a geographic form. Temporal is we worked over here five minutes ago. Now there's some damage. We're not working there anymore. The liability insurer for the general contractor should come in and pay for that damage. The geographic one is we were hammering on the front side of that wall. We may have done some damage to the back side. We weren't performing operations on the back side, so therefore the general contractor's liability insurer should come in and pay for that damage. Each of those assertions has been rejected by the courts I just mentioned, the Clarendon Court, the Toll Brothers Court squarely considered those, the Arroyo Court squarely considered those. And I think underlying that is the logical fallacy that a general contractor is only performing operations on little discrete parts of a project. A general contractor by its very nature is charged with coordination and supervision of the entire project. They have a responsibility generally to coordinate, supervise the subcontractors, perform things in the correct order, protect portions of the work. The allegation here absolutely contradicts that. Archer says they were under the direction of GE in connection with a very significant part of this work. Well, that's what Archer says. That's not what the allegations were against them, and that didn't form the basis of the settlement. But the factual record here supports that assertion. I don't know that it does. I would refer to the court to excerpts of record 134 and 145, which are portions of Archer's contract, which charge them with ensuring and managing the property and the work performed throughout the job site at all times. But the district court, as a part of its summary judgment ruling, didn't get into any of this, right? Obviously the district court's not going to make any findings. But as I understand the district court's approach here, the district court said categorically because Archer is a general contractor, end of analysis. So we don't even get to who did what, when, why, under whose supervision. None of that is relevant, it seems to me, if in fact the rule of decision is general contractor, no coverage.  Who cares about what the contractor did or didn't do or who was in charge of any particular part of the contract execution? I mean, am I right about that, about my characterization of the district court's approach? I would say it goes a little further than that. A little further. Yeah, I think that first you have to establish that it's a general contractor to overall supervisory responsibility for the project. That's not disputed here. And agree to perform the scope of work. And that's not disputed. Right. The damage has to be to the scope of work. That's not disputed. And the damage has to be while the operations are ongoing. And that's not disputed. Right, but a little bit more. What's the little bit more? It's a blanket rule. General contractor doing the work, deficiencies in the work, causing injury to the owner. If it's a general contractor, you don't go any further. I believe that is actually where the California Courts of Appeal have landed on this and where this court landed in Arroyo. So I guess exclusions, aren't we in particular supposed to view exclusions very narrowly? What's your response to those arguments that are being made? I think the Hornbook answer is, of course, exclusions are construed narrowly and coverage grants are construed broadly. This exclusion has some additional language where it says, and arising out of Archer's operations, which the courts have all recognized broadens the exclusion. And I think that in the context of a general contractor, what the Justice has just articulated is the test and is appropriate under that exclusion. To suggest otherwise runs afoul not only of the California courts and the determinations, but also the public policy underlying all those decisions, which is reflected in many of those opinions, which is these are called the business risk exclusions for a reason. The general contractor assumes the business risk of performing its contract faithfully and in compliance with the terms and conditions thereof. To have the insurance carrier of the general contractor come in and effectively bail out the general contractor for problems that occur midstream in a project, is simply a bad idea. What it does is it increases the expense of insurance for all contractors. This has been recognized by the courts. It also takes away the incentive for the general contractor to run a proper job, and both of those are considered negative by the courts, and they're the established public policy of California. How about Blackfield? Can you talk to me a little bit about that? Because even though that was a duty-to-defend case, it seems like there's some confusion based on what was said in that case, how the California courts interpret the language of exclusions at issue in that case. No problem. And if I may, I'll just address Eichler and Blackfield together because I think they're generally construed together. They are very similar to each other. They're also very distinct from the facts of this case. As Your Honor noted, they're 50 years old. They interpret different policy language. The exclusion is entirely different. Fundamentally, the definition of property damage was very different. That's a significant issue that we could have an academic discussion on. I'm not sure it truly matters at this point. They did not have the modern business risk exclusions, and as you said, they're a duty-to-defend case, not an actual determination that there's coverage. So while they did have that particular part or some variation on that language, the remaining of the language in the policy was really quite radically different, and the court's determinations with regard to them were quite radically different. Okay. You don't genuinely dispute the ability of this court to look at treatises on insurance law in evaluating the issues in this case, do you? Your Honor, we would welcome the court's reference to treatises and learned texts of all sorts. I would say that they are often useful, particularly in a jurisdiction where there may not be established case law on the topic. That's not the situation in California. I think we have about 30 years of established law on the topic, and while the various commentators may have a lively debate amongst themselves as to whether they think California's rule of law on this issue is appropriate, what is beyond debate is that it actually is the rule of law in California. You read those treatises as criticizing the California law. I read Mr. Turner's commentary as criticizing California law. The preface to Mr. Turner's book, I should note, pretty much tells you where he's coming from on these issues. He says it's written as an instruction manual for construction litigators to seek and pursue insurance coverage to assist them in resolving construction disputes. It's not presented as an even-handed treatise of the statement of the law on these issues, more of a hand guide for people seeking to obtain insurance coverage. Thank you. One last question, if I may. Blackfields steal good law, isn't it? I think that if that policy form was in use with its definition of property damage that has been interpreted to include simple diminution in value and incorporation of faulty workmanship into a project, certainly. Okay, I get you're distinguishing, and of course that's what we do, but in fact it is still good law. Correct, it has not been overturned by any court. It's 50 years old, 100 years old. It's good law. Agreed. What I would also note is those were completed operations cases, too. Okay. It was somewhat distinct. Thank you. Thank you. Just briefly, I would like to read from the contract between the owner and Archer as respects installation of the turbines. Quote, all installation work and adjustments shall be performed under the supervision of the manufacturer's supervising erectors. The work shall be done in accordance with their instructions. This is a dramatically different case from a general contractor who has authority over the entire project, and you just heard from counsel that that's the reason why the courts have found that the general contractor's work is the entire project, because they control it. We don't control the entire project here. Here we have a major piece of equipment, the turbines, which was the most valuable piece, which was the piece that caused all the damage and delay in this case because it needed repair. That was under the control of GE. It was built by GE. It was owned by the owner. It was not our work. So this case presents a dramatically different situation because there's a separate contractor. Yeah, but now you're arguing who's at fault. Well, I'm just saying that for the purposes of determining what work was damaged, was it our work or was it GE's work, this case is different from a typical case with a general contractor because we don't control the entire project, and there was a significant part of the work that was the work of GE. Shouldn't you be responsible for the part of the work that you do control? Well, I think that the cases Eichler and Blackfield say that we are responsible for our defective work. And so isn't the allegation that it was faulty work on your part, even with respect to the limited part that you say you had in the turbine? No question. There was allegations that we did defective work, that we improperly stored components that got dirty and that that was the reason that it seized, that we improperly put pieces in concrete that got deformed and that that was the reason it seized. But that's a factual dispute. The dispute is was it our work that caused the damage or was it GE's work? That's a classic factual dispute, and that's why it was improper to decide this in summary judgment. But it's a factual dispute that's material to the coverage claim only if your interpretation of the policy language prevails. No. Right? I don't agree because I think there's three things, particular part, our working, a rise out of your work. It doesn't arise out of our work. Even if the particular part is found the way the district court found it, still there's three hoops that you have to go through to get to the exclusion. The last hoop you don't get through. Well, I thought that the district court said that the actual resolution of the factual cause of damage is irrelevant, and you think that that's wrong. I think that's wrong, and as I argued to the district court in my oral argument, which I've attached as part of the record here, I said there's a broad indemnity. There's a type one indemnity. It makes us liable for everything, whether it was our fault or not. And those are those kinds of contracts that the courts try to cut back on because they're so unfair to contractors. But that's the reality that we had to deal with, and that's why we settled. Okay. Nothing further, Your Honor. Thank you for your time. Thank you. Thank you both for your very helpful arguments here today. The case of Archer Western Contractors v. National Union Fire Insurance Company of Pittsburgh, Pennsylvania, is submitted.
judges: Schroeder, Murguia, Davis